# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### 3:17-cv-653-RJC
### (3:14-cr-195-RJC-DCK-1)

| | | |
|---|---|---|
| **PAUL R. TOTH, JR.,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**THIS MATTER** is before the Court on Petitioner's *pro se* Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), and Amended Motion to Vacate, (Doc. No. 8).

## I.    BACKGROUND

Petitioner was charged for his involvement in a fraudulent lottery scheme for: Count (1), conspiracy to commit money laundering (18 U.S.C. § 1956(h)); and Counts (2)-(7), money laundering concealment and aiding and abetting the same (18 U.S.C. § 1956(a)(2)(B)(i)). See (3:14-cr-195, Doc. No. 3).

The Government presented evidence at trial that an elderly couple, Wilma and Darwin Follman, had wired over $300,000 to Petitioner in 37 transactions in order to procure lottery winnings as part of a scam. (Id., Doc. No. 57 at 37, 179-80). Petitioner recruited several friends and family members to cash checks at various banks and in different account numbers;  $208,214 of the money was broken down into smaller amounts that were then sent in 81 separate wire transfers to Costa Rica. (Id., Doc. No. 57 at 180, 188). Petitioner received money for each of these transactions, usually between $2,000 and $3,000, totaling over $99,000 of the Follman's money.

1

(Id., Doc. No. 57 at 168, 180). Agent Eric Kost investigated the case and interviewed Petitioner on several occasions. Petitioner's videotaped statements were played for the jury. (Id., Doc. No. 156 *et seq.*). Agent Kost presented evidence about the flow of the Follmans' money to Petitioner then to Costa Rica, the role of each of Petitioner's crew members, and the pattern of concealment that indicated Petitioner was aware that he was engaged in illegal conduct. (Id., Doc. No. 57 at 180-88); (Id., Doc. No. 58 at 5-6).

The Court informed Petitioner about the right to testify or not testify as follows:

THE COURT: … I wanted to talk to you about something that I'm sure you've talked to your attorney about, and that's your right to testify or not to testify. I'm sure you have talked to Mr. Jones, Mr. Phillips, and you will continue to talk to them. But I wanted to make sure that I had a conversation with you.

And you have a right not to testify. I've told the jury that already. I've instructed them at the end of the case, if that's your choice that they can't hold that against you. That's your constitutional right.

You also have a right to testify. And although your lawyers can instruct you and recommend things to you, at the end of the day it's a personal choice that you make.

And I wanted to make sure that you knew that you had an absolute right not to testify, if that's what you chose, can't be held against you. And you have an absolute right to testify if that's your choice. Do you understand?

THE DEFENDANT: Yes, Your Honor. Thank you.

THE COURT: And some time after the government rests I'm going to come back and ask you what your choice is. I just wanted to take this time when the jury is out to explain that to you.

THE DEFENDANT: Appreciate that.

(Id., Doc. No. 57 at 189-90).

The Court followed up the next day after the Government rested:

THE COURT: … I'd like to make an in-court inquiry of Mr. Toth in light of our conversation last night on your choice as to whether to testify or not. Again, you

2

have a constitutional right not to testify, but you also have the right to testify if that's your choice. Have you been able to talk with your attorney about that choice?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And have you made a choice whether to testify or not?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And what is that choice?

THE DEFENDANT: I will testify.

(Id., Doc. No. 58 at 38-39).

Petitioner testified that a college friend, Chris Griffin, contacted Petitioner around 2008 saying that he had come into a fortune and asking Petitioner to send Griffin's inheritance money, that he was having trouble accessing in Costa Rica where he was living, for investments. (Id., Doc. No. 58 at 49-50, 53). Petitioner carried out multiple transactions involving "Wilma," who he though was Griffin's aunt. (Id., Doc. No. 58 at 53-54). He admitted speaking to Wilma on three occasions and told her that Chris was not available to speak with her and that he would contact her another time. At one point, Petitioner's bank account was temporarily frozen then unfrozen. Up until the point when his account was frozen, Petitioner did not think anything was wrong. Eventually Petitioner was blocked from sending further funds to Costa Rica so he asked friends and family to help him. (Id., Doc. No. 58 at 60-64). Petitioner claimed that he became suspicious towards the end of October 2010 when Griffin asked him to dress up as a mailman, pick up $50,000 in cash, and fly it to Costa Rica. (Id., Doc. No. 58 at 72-73). Petitioner refused and, the next day, an unsigned blank check arrived at Petitioner's home. Petitioner put the money in the bank but the bank rejected the check. Petitioner did not send any more money to Costa Rica. Petitioner claimed that he would not have helped Griffin move money or get his family and friends involved if he knew that Griffin was a con artist. (Id., Doc. No. 58 at 75). On cross-examination, Petitioner

3

testified that he would keep a couple hundred dollars, up to $1,000, per transaction. (Id., Doc. No. 58 at 92). Defense counsel also called several other witnesses for the defense. See (Id., Doc. No. 58 at 39-137).

The jury found Petitioner guilty of all seven counts. (Id., Doc. No. 43).

The Presentence Investigation Report ("PSR") calculated the base offense level as 20 because the base offense level for money laundering is 12 and eight levels were added because the value of laundered funds was $307,702. (Id., Doc. No. 55 at ¶ 47). Four levels were added because Petitioner was in the business of laundering funds, two levels were applied because the offense involved sophisticated laundering, two levels were added because Petitioner knew or should have known the victims were vulnerable, four levels were added because Petitioner was a leader or organizer of a criminal activity involving five or more participants or was otherwise extensive. (Id., Doc. No. 55 at ¶¶ 48-51). Two levels were added for obstruction of justice because "[t]e government has provided information that indicates that the defendant attempted to obstruct justice by providing false statements to investigators, provided false testimony at trial, and disobeyed the Court's Order prohibiting contact with witnesses." (Id., Doc. No. 55 at ¶ 52). This resulted in an adjusted offense level subtotal of 34. (Id., Doc. No. 55 at ¶ 53). Petitioner had one criminal history point and a criminal history category of I. (Id., Doc. No. 55 at ¶¶ 62-63). The resulting advisory guidelines range was between 151 and 188 months' imprisonment. (Id., Doc. No. 55 at ¶ 100).

Counsel filed written PSR objections on Petitioner's behalf. (Id., Doc. Nos. 51, 59); see also (Id., Doc. No. 61 at 4-6) (Sentencing Memorandum).

At the sentencing hearing, the Court asked Petitioner whether he had reviewed the PSR as follows:

THE COURT: … Have you had a chance to read the presentence report?

4

THE DEFENDANT: The rough draft one.

THE COURT: All right. So the presentence report that I have in front of me is dated – the final report is November 19, 2015, that's the one you're referring to. And then there's a revised report of February 12.

So is it my understanding that you reviewed the November 19 final report?

MR. JONES: Your Honor, what Mr. Toth is telling me is that he has seen and received the October 15, 2015, draft. I'll tell the Court, I've sent copies of both the next two presentence report to him. I've also been to visit him at the Mecklenburg County jail and we've discussed –

THE COURT: Have you gone over the differences between the October report and the final report?

MR. JONES: I have. And specifically we've gone through the objections or the enhancements that were added. We talked about the different enhancements that have been added and the objections that I've lodged to those.

THE COURT: Very well. And do you confirm all that, Mr. Toth?

THE DEFENDANT: We went over the objections, yes.

THE COURT: And so, I guess, my question for you would be:

The report you reviewed, did you understand it?

THE DEFENDANT: Yes.

THE COURT: And the objections that Mr. Jones went over with you and the modifications to the report, did you understand all of those? I'm not asking if you agree with them, but did you understand those?

THE DEFENDANT: I got to see some of the objections. Yes, I'm pretty sure I understood them.

THE COURT: Well, let me ask you whether you believe that you've had enough time to go over the presentence report and the objections in the – and the presentence reaction to those objections have you had enough time to go over those things with your attorney?

THE DEFENDANT: The ones I have here –

(Conferring with counsel.)

THE DEFENDANT: Yes.

THE COURT: Do you think you've had enough time?

THE DEFENDANT: Yes.

THE COURT: Very well. What I'm going to do is let Mr. Jones argue any objections he wishes to argue, and at some point before imposing sentence I'm going to let you say whatever you think I need to hear from you.

THE DEFENDANT: Thank you, Your Honor.

(3:14-cr-195, Doc. No. 76 at 2-4).

The Court sustained the defense objection to paragraph 49 and found that the offense did not involve sophisticated money laundering. The Court also reduced the enhancement in paragraph 51 to three levels after finding that Petitioner was a manager or supervisor but not a leader or organizer. The Court overruled the objection to the enhancement for obstruction of justice because "the whole thrust of the testimony was false, and knowingly so, with an intent to deceive…." (Id. Doc. No. 76 at 35). The Court's rulings reduced the total offense level to 31 and the resulting guidelines range was 108 to 135 months' imprisonment.

Defense counsel argued that a sentence below the guidelines of 87 months' imprisonment would be appropriate based on a number of factors including Petitioner's characteristics and family support. (Id., Doc. No. 76 at 36-42). Petitioner chose to speak at the sentencing hearing, addressed his rehabilitation and other mitigating circumstances, and asked for the Court's forgiveness and mercy. (Id., Doc. No. 76 at 42-44).

The Court declined to depart from the advisory range and sentenced Petitioner at the bottom of the range to 108 months' imprisonment with all counts running concurrently. (Id., Doc. No. 65); see (Id., Doc. No. 66) (Statement of Reasons).

6

On direct appeal, Petitioner argued that the Court erred in instructing the jury on willful blindness. The Fourth Circuit Court of Appeals affirmed, finding that Petitioner invited the error by requesting the willful blindness instruction and failed to establish the presence of extraordinary circumstances. United States v. Toth, 671 Fed. Appx. 151 (4th Cir. 2016). The United States Supreme Court denied certiorari on April 24, 2017. Toth v. United States, 137 S.Ct. 1830 (2017).

Petitioner filed his initial § 2255 Motion to Vacate on November 3, 2017.[1] (Doc. No. 1). He argues that counsel was ineffective for (renumbered): (1) misadvising Petitioner during plea negotiations; (2) directing Petitioner to contact a prosecution witness to obtain information for interviews, which resulted in a sentencing enhancement for obstruction of justice; (3) making a tactical decision to center the trial strategy on Petitioner's testimony while he was on opiates for pain; and (4) electing not to attend Petitioner's presentencing interview.

The United States argues that these claims are meritless because counsel's performance was not unreasonable and Petitioner has failed to demonstrate prejudice.

Petitioner filed an Amended § 2255 Motion to Vacate on July 16, 2018. (Doc. No. 8). He reiterates the claims raised in the initial Motion to Vacate and additionally argues that (5) counsel was ineffective for failing to inform Petitioner about bank transaction evidence until the eve of trial, failing to ask Petitioner to gather critical evidence to explain the transactions, and failing to file a continuance that would make Petitioner more credible. He argues that this resulted in a guilty verdict and an enhanced sentence. (Doc. No. 8 at 17).

---

[1] Houston v. Lack, 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (establishing the prison mailbox rule); Rules Governing § 2255 Proceedings for the United States District Courts, Rule 3(d) (addressing inmate filings).

The United States argues that the Amended § 2255 Motion to Vacate is time-barred because it was filed 15 months after the conviction became final, reiterates the claims in the original § 2255 Motion to Vacate, and fails on the merits. (Doc. No. 14).

Petitioner filed a Reply, (Doc. No. 17), arguing that his Motion to Amend should be granted. He argues that an evidentiary hearing is required because the Government concedes that it has "no direct knowledge" about what occurred between defense counsel, Petitioner, and Petitioner's family. (Doc. No. 17 at 1). He reiterates that counsel was ineffective for making a tactical decision to center the trial strategy around Petitioner's testimony while he was on opiate pain medication, directing Petitioner to contact a prosecution witness, choosing not to attend Petitioners PSR interview, failing to describe sentencing enhancements to Petitioner prior to trial, and for failing to convey a formal plea offer. Petitioner requests the appointment of counsel and an evidentiary hearing.

## II.  STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein.  After examining the record in this matter, the Court finds that the argument presented by the Petitioner can be resolved based on the record and governing

case law and that no evidentiary hearing is warranted. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

### (1) Amended Motion to Vacate

The Government does not contest the timely filing of the initial § 2255 Motion to Vacate. It does, however, argue that the Amended § 2255 Motion to Vacate is time-barred because it was filed outside the one-year statute of limitations, Petitioner has failed to demonstrate that an exception applies, and it is "redundant" as it reiterates the same claims that Petitioner raised in his initial Motion to Vacate. (Doc. No. 14 at 5).

A one-year statute of limitation applies to motions to vacate under § 2255, which runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

For an untimely claim to relate back to the original timely-filed pleading, it must be shown that "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). In the context of a habeas motion, "conduct, transaction, or occurrence" does not mean the same "trial, conviction, or sentence," such that any claim that relates to the prior

9

conviction or sentence challenged in a habeas motion is considered timely, no matter how long after the original motion it is filed. Rather, a proposed amendment relates back to the date of the original motion if it "state[s] claims that are tied to a common core of operative facts." Mayle v. Felix, 545 U.S. 644, 664, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005).

Petitioner's Judgment became final when the Supreme Court denied certiorari on April 24, 2017. He had one year, until April 24, 2018, to file a § 2255 petition pursuant to § 2255(f)(1). Petitioner timely filed the initial § 2255 Motion to Vacate on November 3, 2017, but he filed the Amended § 2255 Motion to Vacate more than two months late on July 16, 2018.

The Government's argument that the Amended Motion to Vacate is time-barred is undermined by its contention that the Amended Motion to Vacate merely reiterates the claims raised in the original Motion to Vacate. As such, those, claims would relate back to the original timely-filed Motion to Vacate. Thus, the Court will consider the claims raised in the initial Motion to Vacate as well as the Amended Motion to Vacate.

**(2)** **Ineffective Assistance of Counsel Claims**

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011) (quoting

*Strickland*, 466 U.S. at 689). The <u>Strickland</u> standard is difficult to satisfy in that the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." <u>See</u> <u>Yarborough v. Gentry</u>, 540 U.S. 1, 8, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003). The prejudice prong inquires into whether counsel's deficiency affected the judgment. <u>See</u> <u>Strickland</u>, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694. In considering the prejudice prong of the analysis, a court cannot grant relief solely because the outcome would have been different absent counsel's deficient performance, but rather, it "can only grant relief under . . . <u>Strickland</u> if the 'result of the proceeding was fundamentally unfair or unreliable.'" <u>Sexton v. French</u>, 163 F.3d 874, 882 (4th Cir. 1998) (quoting <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." <u>Bowie v. Branker</u>, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." <u>United States v. Rhynes</u>, 196 F.3d 207, 232 (4th Cir. 1999), *vacated in part on other grounds*, 218 F.3d 310 (4th Cir. 2000).

Petitioner raises a number of claims of ineffective assistance of trial counsel that will be addressed in turn:[2]

### (A)     <u>Plea Negotiations</u>

The Sixth Amendment right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. <u>See</u> <u>Missouri v. Frye</u>, 566 U.S. 134, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012). Thus, criminal defendants are "entitled to the effective assistance of

---

[2] Petitioner's claims have been liberally construed, rephrased, and renumbered. Any argument or sub-claim not specifically addressed in this Order has been considered and rejected.

competent counsel" during that process. <u>Lafler v. Cooper</u>, 566 U.S. 156, 162, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012) (internal quotation marks omitted); <u>Merzbacher v. Shearin</u>, 706 F.3d 356, 363 (4th Cir. 2013). There is "no right to be offered a plea … nor a federal right that the judge accept it…." <u>Frye</u>, 566 U.S. at 148. The decision whether to initiate plea negotiations is a strategic one. <u>See</u> <u>Weatherford v. Bursey</u>, 429 U.S. 545, 561, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). However, counsel is still required to be a "reasonably effective advocate" regarding the decision to seek a plea bargain. <u>United States v. Pender</u>, 514 Fed. Appx. 359 (4th Cir. 2013) (quoting <u>Brown v. Doe</u>, 2 F.3d 1236, 1246 (2d Cir. 1993)).

As a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. <u>Frye</u>, 566 U.S. at 145. To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel, as well as a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it. <u>Id.</u> at 147. It is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time. <u>Id.</u>

Petitioner appears to allege that counsel was ineffective for failing to convey a favorable plea offer in March 2015, failing to pursue a second informal offer, failing to inform Petitioner of the possibility of pleading guilty without a plea agreement, and for misadvising him to proceed to trial by giving him incorrect information about his sentencing exposure and the strength of the Government's case.

First, with regards to a formal plea offer, Petitioner claims that "during the pre-trial phase[,] … [Petitioner] was informed by … defense counsel that a plea offer was made by the prosecution." (Doc. No. 1 at 30). The offer occurred between March and April 2015. It was for 24 months' imprisonment and required Petitioner to provide information about how Griffin devised his crimes. (Doc. No. 8 at 25). Counsel explained that there would be a two-point enhancement for the victims and maybe two or three points for leadership, which would result, at most, at an offense level of 25 and that he would face, at most, five years' imprisonment if he went to trial. (Doc. No. 8 at 25). Petitioner complains that counsel did not give him a "copy of the formal offer" which made it impossible for him to understand the charges, plea terms, and any information regarding enhancements while he was on pain medication, and that the formal offer was not made part of the record before trial. (Doc. No. 1 at 25-26). "Counsel informed Petitioner that 'mens rea' could not be proven by the prosecution and this was his reason for the tactical decision not to present the written plea agreement to [Petitioner]." (Doc. No. 1 at 31). Petitioner claims that he made numerous attempts to contact counsel by email and phone "in order to have [the] charges explained to [him], the potential sentence if found guilty, and the benefits of the plea offer" but he did not receive such advice from counsel as requested. (Doc. No. 1 at 30). The only information that counsel sent to Petitioner were "summary statements of what the witnesses said, Petitioner's interview, and the indictment." (Doc. No. 8 at 25). Counsel demanded a final answer on the spot over the phone while Petitioner was medicated and struggling to understand. (Doc. No. 8 at 26). Petitioner claims that he would have accepted the offer rather than going to trial had counsel advised him correctly and that he would have attempted to provide cooperating information. (Doc. No. 8 at 24).

Petitioner's argument that counsel did not provide him with a written copy of the formal plea offer and that the offer was not made part of the record are legally unsound. There is no requirement that a plea offer be conveyed in writing or entered into the record. See Fed. R. Crim. P. 11. Petitioner's reliance on Frye on this point is misplaced. In Frye, the Supreme Court merely notes that states may require that plea offers be conveyed in writing. That portion of Frye has no bearing on Petitioner's federal criminal case.

Assuming *arguendo* that counsel performed deficiently in any of the ways described by Petitioner with regards to the formal plea offer, this claim still fails because he has not shown that the outcome of the plea process would have been different with competent advice. Petitioner alleges that the formal plea offer required Petitioner to explain Griffin's scheme but Petitioner claims he did not possess that knowledge. Petitioner's claim that he would have accepted the formal plea offer but for counsel's deficient performance is thus self-defeating in that he could not have accepted the formal plea offer regardless of counsel's advice.

Next, Petitioner appears to allege that counsel was ineffective with regards to a modified plea offer. Petitioner claims that counsel told him just prior to trial on July 27, 2015 that "the modified plea offer was approaching the calculated level 22 sentence." (Doc. No. 1 at 32). Petitioner told counsel that he still did not understand the first plea offer and that counsel "declined the plea offer as a 'tactical' decision and prevented [Petitioner] from making an informed decision." (Doc. No. 1 at 32). Petitioner further alleges that he thought he was only facing five years going to trial or a little less time by taking the pleas and it was with this "incorrect understanding that the Petitioner declines the pleas because he couldn't explain details of Chris's procedures and the amount of incarceration would be close to the same either way." (Doc. No. 8 at 26). Petitioner went to trial and received a sentence more than four times the formal offer.

This claim is refuted by the record. Petitioner's allegations demonstrate that the modified plea offer, like the formal plea offer, would require him to provide information about Griffin which Petitioner claims he lacks. His contention that he thought he was only facing around five years' imprisonment if he lost at trial is also conclusively refuted by the record. Petitioner told a witness in June 2015 – two months before the August 2015 trial – that "[t]hey want to put me in for 8 years if found guilty." (3:14-cr-195, Doc. No. 31-1 at 2). To the extent that counsel's eight-year estimate did not include an enhancement for obstruction of justice, counsel cannot be deemed ineffective in this regard because he could not have anticipated that Petitioner would perjure himself at trial. See, e.g., Van Wart v. United States, 2013 WL 3788535, at *3 n.3 (D. Md. July 18, 2013) (noting that counsel could be forgiven for failing to show § 2255 petitioner the sentencing guideline addressing obstruction of justice because counsel would not have known at the time that petitioner was going to suborn perjury). Moreover, Petitioner's allegation that counsel rejected the plea for him as a tactical decision conflicts with his allegation that he rejected the plea offers because he lacked information about Griffin. These contradictory allegations are unworthy of belief. See, e.g., Holston v. United States, 796 Fed. Appx. 721, 725 (11th Cir. 2019) (district court did not abuse its discretion in summarily dismissing § 2255 petition where petitioner's claims were self-contradictory and inconsistent with the record); Jackson v. United States, 638 F. Supp. 2d 514, 581 (W.D.N.C. 2009) (rejecting "bald assertions and conclusory allegations" as facially insufficient to support a claim on a motion under Section 2255).

Finally, Petitioner appears to allege that counsel was ineffective for failing to inform him that he could plead guilty without a plea agreement. Any suggestion that the Court would have accepted an Alford[3] plea is purely speculative. Further, the record contradicts Petitioner's

---

[3] North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

contention that he would have accepted responsibility if counsel had informed him of the ability to plead guilty without a plea agreement. Petitioner testified at trial that he did not know he was involved in a fraudulent scheme and would not have recruited his friends and family to be involved had he known anything improper was going on. Petitioner further testified that he ceased his involvement in the scheme as soon as Griffin asked him to pose as a mailman. Petitioner did not accept responsibility for his actions in any way and even went as far as contacting witnesses and perjuring himself at trial in an attempt to avoid criminal liability. Petitioner's contention that he would have pled guilty without any plea agreement to seven serious charges, each of which carried a statutory maximum sentence of 20 years' imprisonment, in exchange for a possible reduction for acceptance of responsibility, is not supported by the record. See Briggs v. United States, 187 Fed. Appx. 540 (6th Cir. 2006) (affirming summary denial of claim of ineffective assistance of counsel where petitioner's contention that he would have pled guilty in return for a sentence reduction for acceptance of responsibility was inherently incredible).

Petitioner has failed to demonstrate a reasonable probability that, if counsel had correctly advised him about the possibility of pleading guilty without a plea agreement, Petitioner would have done so, that such a plea would have been accepted by the Court, and that the result would have been a lesser conviction and/or sentence. Petitioner's claims that counsel was ineffective with regards to plea negotiations are thus without legal foundation, too vague, conclusory, and speculative to support relief, and conclusively refuted by the record.

    **(B)**    **Contact with Witnesses**

Petitioner contends that counsel performed unreasonably by instructing Petitioner to contact witnesses before trial. Petitioner states that counsel called Petitioner on July 27, 2015 and told him that he would come to Ohio and prepare for the August 3 trial on July 28, 29, and 30,

which is "when he would talk to witnesses and complete an investigation." (Doc. No. 1 at 28). Petitioner claims that "[c]ounsel directed [Petitioner] to contact witnesses to inform the witnesses that he was coming to speak to them, to include prosecution witnesses." (Doc. No. 1 at 28). Petitioner argues that he followed counsel's instructions and contacted witnesses, which caused his bond to be revoked and the imposition of a sentencing enhancement for obstruction of justice that increased his sentence.

Petitioner's claim is conclusively refuted by the record. Petitioner contends that counsel instructed him on July 27, 2015 to contact witnesses for trial preparation. (Doc. No. 1 at 28); <u>see also</u> (Doc. No. 8 at 33) (affidavit of Petitioner's mother stating "[a]bout a week before the trial my son's counsel asked me to get in touch with government witnesses to arrange meeting times with him."). However, the record shows that Petitioner was contacting witnesses months before counsel's purported instruction. The Government's Motion to Revoke Bond and its attachments reflect that Petitioner contacted witness Freddy Groves several times during May and June 2015 and that he contacted witness Thomas Stone during the week of July 19-26, 2015, several days before counsel's purported instruction to Petitioner on July 27. (3:14-cr-195, Doc. No. 31). Further, Petitioner's contention that he contacted the witnesses solely to find out about their availability to meet with counsel is also refuted by the record insofar as Petitioner told Groves and Stone that he thought the scheme was "legit" and Petitioner told Groves that Petitioner is "not guilty" (<u>Id.</u>, Doc. No. 31-3 at 1); (<u>Id.</u>, Doc. No. 31-5 at 1).

Petitioner has also failed to demonstrate prejudice. He contends that the Court applied an obstruction of justice enhancement due to the witness contact, which increased his sentence. However, the sentencing hearing transcript reflects that the Court imposed the two-level obstruction enhancement because Petitioner perjured himself at trial, and not because he contacted

witnesses. See (Id., Doc. No. 76 at 35) (in explaining the decision to overrule the objection to the two-level enhancement for obstruction of justice, the Court stated "I believe that the whole thrust of his testimony was false, and knowingly so, with an intent to deceive."). The Court notes that the sentence of 108 months' imprisonment that Petitioner received is within the advisory range had the two-level obstruction enhancement not been included. See U.S.S.G. Sentencing Table (2015) (level 31, category I range of 108-135 months; level 29, category I range of 87-108 months).

Petitioner's claim that Petitioner contacted witnesses at counsel's direction and that this resulted in an increased sentence is conclusively refuted by the record and will be denied.

### (C) Failure to Investigate and Present a Defense

To support an ineffective assistance claim based on the failure to investigate, a petitioner must present specific information to show what favorable evidence the investigation would have produced. See Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996). If there is "no reasonable probability that a possible defense would have succeeded at trial," counsel's failure to investigate such a defense is not prejudicial. See Savino v. Murray, 82 F.3d 593, 599 (4th Cir. 1996). Attorneys have wide latitude in determining which witnesses to call as part of their trial strategy. See generally Pruett v. Thompson, 996 F.2d 1560, 1571 n.9 (4th Cir. 1993) (decisions about what types of evidence to introduce "are ones of trial strategy, and attorneys have great latitude on where they can focus the jury's attention and what sort of mitigating evidence they can choose not to introduce."). The decision not to call particular defense witnesses is normally a strategic decision demanding the assessment and balancing of perceived benefits against perceived risks, and one to which "'[Courts] must afford ... enormous deference.'" United States v. Terry, 366 F.3d 312, 317 (4th Cir. 2004) (quoting United States v. Kozinski, 16 F.3d 795, 813 (7th Cir. 1994)). In regard to a decision to call or not call a witness, "there is a presumption that 'counsel's conduct falls within

18

the wide range of reasonable professional assistance.'" <u>Byram v. Ozmint</u>, 339 F.3d 203, 209 (4th Cir. 2003) (quoting <u>Strickland</u>, 466 U.S. at 669). The Supreme Court "has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009).

Petitioner contends that counsel failed to adequately prepare Petitioner to testify, present Petitioner with full discovery, instruct Petitioner to gather evidence that would have been helpful at trial, or seek a continuance so that Petitioner could gather the evidence. Petitioner contends that counsel went over Petitioner's testimony several days before trial for five hours while Petitioner was "mentally impaired," that counsel could not impeach defendant's testimony on several "deceptions" which made Petitioner's credibility questionable, and rendered Petitioner unable to recall money, payments, and time line clearly which led to a conviction and enhancements. (Doc. No. 8 at 18).

With regards to exculpatory evidence that Petitioner claims he could have collected, this claim is conclusory and unsupported. Petitioner contends that helpful information about transactions in his possession, but he has failed to come forward with that evidence. Assuming *arguendo* that counsel was ineffective for failing to instruct Petitioner to gather the evidence so that it could be introduced at trial, Petitioner has failed to demonstrate that there is a reasonable probability of a different trial outcome absent counsel's alleged deficiency.

Petitioner also claims that counsel was ineffective for failing to share discovery with Petitioner. Even if counsel had failed to provide Petitioner with full witness statements, Petitioner has failed to demonstrate a reasonable probability of a different trial outcome had counsel provided the full statements. Petitioner's allegation that counsel inadequately prepared him to testify likewise fails. No specific time is required for counsel to adequately prepare for trial. <u>Moody v.</u>

Polk, 408 F.3d 141, 148 (4th Cir.2005) ("there is no established minimum number of meetings between counsel and client prior to trial necessary to prepare an attorney to provide effective assistance of counsel.") (internal quotation marks omitted). Petitioner has failed to establish prejudice because he fails to explain how additional time preparing or reviewing evidence had a reasonable probability of a different trial outcome, especially in light of the strong evidence of his guilt.

Petitioner's contention that he was under the influence of pain medication during trial preparation and at trial likewise fails. Petitioner claims that it would have taken him 30 to 90 days to detox from his pain medication. The August 3 trial date was set May 21, 2015. (3:14-cr-195, Doc. No. 21). Petitioner could have stopped taking the medication in May but chose not do so. Moreover, Petitioner was lucid at the time of trial, he demonstrated no incapacity, and he presented testimony that was consistent with his theory of the case. There is no support in the record for Petitioner's contention that he was nodding off during trial and unable to participate in his defense. That the jury ultimately found Petitioner to be incredible does not demonstrate that counsel was deficient. Counsel performed effectively and presented a reasonable theory of defense, albeit one that the jury ultimately rejected.

Moreover, Petitioner cannot demonstrate prejudice. The Government presented strong evidence of Petitioner's guilt and there is no reasonable probability that the trial would have resulted in a different outcome but for counsel's alleged deficiencies. See, e.g., Wolford v. United States, 722 F. Supp. 2d 664, 694 (E.D. Va. 2010) (although counsel's decision not to prepare defendant to testify at trial was unreasonable, defendant was not prejudiced because "no additional amount of preparation, investigation or legal research on the part of trial counsel would have altered the fact that the evidence of guilt presented against [defendant] in the course of the jury

20

trial was overwhelming. Nor would any additional research or trial preparation have resulted in trial counsel's discovery of a viable defense to the charged conduct—there clearly was none."). Petitioner's contention that he would not have been convicted or received sentencing enhancements absent counsel's alleged deficiency is vague, conclusory, unsupported, and will be rejected.

Petitioner's claim that counsel was ineffective with regards to trial preparation and presentation will therefore be denied.

**(D)** **Trial Strategy**

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 690-91. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. Id. In "assessing counsel's investigation, [the court] must conduct an objective review of [his or her] performance, measured for 'reasonableness under prevailing professional norms,' which includes a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'" Wiggins v. Smith, 539 U.S. 510, 523, 123 S. Ct. 2527, 2535, 156 L. Ed. 2d 471 (2003) (quoting Strickland, 466 U.S. at 688–89).

Petitioner contends that counsel was ineffective for making the tactical decision to center the defense strategy on Petitioner's testimony while Petitioner was under the influence of opiate pain medication for a back injury. Petitioner argues that moving for a continuance for Petitioner to detox from the medication and further prepare for trial would have led to his acquittal or a lower sentence.

The record reflects that counsel presented a well-investigated theory of the case. The fact that the jury rejected Petitioner's defense does not, by itself, demonstrate that the representation was ineffective. See Section (C), *supra.* Moreover, assuming *arguendo* that counsel was deficient in with regards to the defense theory, Petitioner has failed to demonstrate prejudice. Petitioner has not identified another defense that counsel could have presented that had a reasonable probability of producing a more favorable outcome, and counsel effectively presented a reasonable theory of defense at trial. See Section (C), *supra*. The strength of the Government's evidence that was presented at trial reveals that there was no reasonable probability of a different outcome but for counsel's perceived deficiency. See, e.g., Tesack v. Trent, 22 F.Supp.2d 540, 549 (S.D.W. Va. 1998) (in a § 2254 case, counsel was not ineffective for presenting a coherent and persuasive theory of defense that was simply defeated by the overwhelming evidence), *dismissed*, 175 F.3d 1016 (4th Cir. 1999).

Petitioner's conclusory contention that the outcome of trial would have been different but for counsel's choice of defense theory is speculative and refuted by the record. Therefore, this claim will be denied.

**(E)      Sentencing**

Petitioner contends that counsel was ineffective for electing not to attend Petitioner's PSR interview, failing to inform Petitioner about enhancements, failing to assist Petitioner or object to enhancements, failing to provide Petitioner with the final PSR and Sentencing Memorandum to see if there were any mistakes, and failing to include favorable facts and letters that could have been considered towards a downward departure or sentence reduction.

As to Petitioner's argument that counsel failed to attend the PSR interview and inform him about enhancements, Petitioner has cited no authority for the proposition that reasonable counsel

is required to attend the PSR with a criminal defendant. See United States v. Hodges, 259 F.3d 655, 660 (7th Cir. 2001) ("[A]bsent particular facts that would suggest otherwise, the decision of whether to attend [a PSR interview] is better left to the discretion of the attorney."); Day v. United States, 2014 WL 12493188, at *2 (E.D.N.C. Feb. 10, 2014) ("The failure to participate in a PSR interview does not satisfy the first Strickland prong"), *dismissed*, 573 Fed. Appx. 275 (4th Cir. 2014). Nor does Petitioner explain how counsel's alleged failure to explain enhancements and his decision not to attend the PSR interview prejudiced him. Petitioner conclusively claims that counsel, if present, could have raised objections. However, he has failed to support this claim with any evidence or explain how there is a reasonable probability that he would have received a lower sentenced had counsel provided him additional information about enhancements, attended the PSR interview, or raised objections at the PSR interview rather than in written objections to the PSR and at sentencing.

Petitioner's contention that counsel failed to provide him with the final PSR and Sentencing Memorandum is refuted by the record. See (3:14-cr-195, Doc. No. 76 at 2-4) (Petitioner confirming that he reviewed the PSR, went over the objections with counsel, understood them, and had enough time to do so). The record further reveals that counsel presented objections in writing and argued them at the sentencing hearing, several of which were successful. (Id., Doc. Nos. 51, 59). Petitioner fails to explain what information he failed to understand, what additional objections counsel could should have made, or what other arguments that counsel could have presented, or how any of counsel's alleged deficiencies in this regard affected his sentence.

Petitioner appears to suggest that counsel failed to adequately investigate and present mitigating evidence and that, if favorable facts were included, Petitioner would have been considered for a reduced sentence. This argument is conclusively refuted by the record. Counsel

23

filed a Sentencing Memorandum raising mitigating factors and attaching mitigating materials including character letters. (Id., Doc. No. 61). Counsel argued at the sentencing hearing that a sentence below the guidelines of 87 months' imprisonment would be appropriate based on a number of factors including Petitioner's characteristics and family support. (Id., Doc. No. 76 at 36-42). Petitioner chose to speak at the sentencing hearing, addressed his rehabilitation and other mitigating circumstances, and asked for the Court's forgiveness and mercy. (Id., Doc. No. 76 at 42-44). Petitioner fails to present any additional or different argument or evidence that Petitioner could have presented that had a reasonable probability of resulting in a lower sentence than sentence that he received at the bottom of the advisory guideline range.

Petitioner also appears to argue that counsel was ineffective for failing to seek a downward variance because of a potential sentencing disparity with Christopher Griffin, who received a 20-year sentence. (Doc. No. 15). Pursuant to § 3553(a)(6), the district court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." United States v. Clark, 434 F.3d 684, 686 (4th Cir. 2006). Counsel was not ineffective for failing to address Griffin and his role in the offense. Counsel noted that Petitioner was a "pawn" in the offense whereas Griffin was the "mastermind," that Griffin carried out the offense before Petitioner became involved, and that he only approached Petitioner when Petitioner was "strongly addicted [to pain medication] and weighing as little as 125 pounds." (3:14-cr-195, Doc. No. 61 at 4, 6). It was impossible for counsel to have made a more specific disparity argument at the time of Petitioner's sentencing in February 2016 because Griffin was not sentenced until June 2019. See (3:14-cr-82, Doc. No. 217). Petitioner has failed to explain what more counsel could have done with regards to Griffin that had a reasonable probability of resulting in a lower sentence.

Petitioner's arguments with regards to sentencing are insufficient to support relief, conclusively refuted by the record, and resulted in no prejudice. Therefore, this claim will be denied.

## IV.  CONCLUSION

For the foregoing reasons, Petitioner's § 2255 Motion to Vacate and Amended Motion to Vacate are denied.

**IT IS, THEREFORE, ORDERED** that:

1.  Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), and Amended § 2255 Motion to Vacate, (Doc. No. 8), are **DENIED**.

2.  **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability.  See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

3.  The Clerk is instructed to close this case.

Signed: April 28, 2020

Robert J. Conrad, Jr.
United States District Judge

26